IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**JAMES CHRISTOPHER CRANK,**

**Petitioner,**

v.  Criminal No. 4:17-CR-103

**UNITED STATES OF AMERICA,**

**Respondent.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is James Christopher Crank's ("Petitioner") second Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). Pet'r's Mot. Compassion. Release, ECF No. 67 ("Pet'r's Mot."). The Government opposed the motion. Gov't Resp. Opp. to Pet'r's Mot. Compassion. Release, ECF No. 72 ("Resp. Opp."). Petitioner replied. Pet'r's Reply to Gov't Resp. Opp. to Pet'r's Mot. Compassion. Release, ECF No. 73 ("Pet'r's Reply"). Petitioner submitted Supplemental Pleading. Pet'r's Supp. Pleading to Pet'r's Mot. Compassion. Release, ECF No. 79 ("Pet'r's Supp."). This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **DENIED**.

**I. FACTUAL AND PROCEDURAL HISTORY**

On October 18, 2017, a Grand Jury in the Eastern District of Virginia indicted Petitioner on ten counts: Count One through Nine charged Petitioner with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1); Count Ten charged Petitioner with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1). Indict., ECF No. 1 ("Indictment"). On December 11, 2017, Petitioner pled guilty to Count Ten, Receipt of Child

1

Pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1). Plea Hear'g, ECF No. 13; Plea Agreement, ECF No. 14. On March 22, 2018, the Court sentenced Petitioner to 108 months imprisonment followed by twenty (20) years of supervised release. J., ECF No. 28. On August 6, 2021, Petitioner filed his first Motion for Compassionate Release through counsel. ECF No. 42. On October 21, 2021, the Court denied Petitioner's Motion. ECF No. 50. On November 2, 2021, Petitioner filed an appeal to the U.S. Court of Appeals for the Fourth Circuit. ECF No. 51. The Fourth Circuit affirmed this Court's decision. ECF No. 55.

According to his Presentence Investigation Report ("PSR"), on July 25, 2017, an FBI Special Agent, along with other law enforcement officers, executed a search warrant at Petitioner's residence. Present. Investig. Rep. ¶ 7, ECF No. 64 ("PSR"). During the search, Petitioner told agents he used his laptop to look at pornography of all ages including underage children. *Id.* On August 8, 2017, a Department of Justice Forensic Examiner found one video of child pornography on Petitioner's laptop. *Id.* During the investigation, Petitioner advised he had been viewing child pornography for approximately five (5) to six (6) years. *Id.* Petitioner admitted he knowingly received the child pornography video specified in Count Ten of the Indictment. *Id.* Defendant is attributed 557 child pornography images, which includes six (6) videos and 107 pictures. *Id.* ¶ 17. Petitioner reported both physical and mental health issues, including being diagnosed with high blood pressure and pedophilic disorder. *Id.* ¶¶ 51-53, 85. Additionally, Petitioner did not report having substance abuse issues. *Id.* ¶¶ 57-58. The PSR assessed Petitioner with a total offense level of 31, a criminal history category of I, and a recommended Guidelines sentence of 108-135 months on Count Ten. *Id.* ¶¶ 68-69. Petitioner is incarcerated at Fort Dix FCI with a projected release date of August 3, 2025.[1]

---

[1] *See* Federal Bureau of Prisons, "Find an Inmate," *BOP.gov*, https://www.bop.gov/inmateloc/ (last visited Sept. 21, 2023).

On December 8, 2022, Petitioner submitted a Request for Compassionate Release to the Warden. ECF No. 62-1. The Warden has not responded to Petitioner's request.

## II.   LEGAL STANDARD

### A. The Threshold Requirement Standard

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the Bureau of Prisons ("BOP") bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies."). In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.*

3

at 129-30 (collecting cases from sister circuits holding the same).

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors outlined in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before passing the FIRST STEP Act, the Sentencing Commission provided a sentence may be modified because of the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" before the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

U.S.S.G. § 1B1.13 is now outdated, however, following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *see also United States v. Lisi*, 440 F. Supp. 3d 246, 250 (S.D.N.Y. 2020), *reconsideration denied*, No. 15 CR. 457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release . . . [but

§ 1B1.13's policy statement] remain[s] as helpful guidance to courts . . . ."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive."). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III.  DISCUSSION

#### A. The Threshold Requirement

The Court finds that Petitioner satisfied the threshold requirement. The Government does not contest such. *See* Resp. Opp. On December 8, 2022, Petitioner submitted a Request for Compassionate Release to the Warden. ECF No. 62-1. The Warden has not responded to Petitioner's request for more than 30 days. Thus, Petitioner meets the threshold requirement.

#### B. Petitioner's Compassionate Release Request

The Court now addresses whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence. Petitioner argues the conditions of confinement at his BOP facility warrant compassionate release given the lingering effects of COVID-19 and its impact on Petitioner's health. Pet'r's Mot. at 1-2. Petitioner further argues his familial circumstances warrant compassionate release. *Id.* Lastly, Petitioner argues the sentencing factors under 18 U.S.C. § 3553(a) support compassionate release. *Id.* Together, Petitioner alleges these circumstances, including his rehabilitative efforts, constitute extraordinary and compelling reasons for his release. *Id.* Therefore, Petitioner asks the Court to resentence him to time served followed by twenty (20)

years of supervised release. *Id.* at 18.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. The CDC lists various medical conditions that may increase an individual's chance of getting sick from COVID-19.[2] Here, Petitioner, age 51, asserts he suffers from obesity, high blood pressure, anxiety, and depression, which makes him more likely to suffer severe illness from COVID-19. Pet'r's Mot. at 2. However, Petitioner's medical records indicate that he receives regular treatment for his medical, physical, and mental health needs. ECF. No. 70. Also, Petitioner has not shown that the BOP cannot manage his medical, physical, and mental health needs. Moreover, Petitioner is fully vaccinated and boosted with the Pfizer vaccine, which mitigates the risk of contracting COVID-19. Pet'r's Mot. at 2. Thus, Petitioner has not established a particularized susceptibility to COVID-19 because of his medical, physical, and mental health needs that would constitute extraordinary and compelling circumstances.

Second, Petitioner does not show a potential risk of contracting the disease at Fort Dix FCI, or that there would be less risk of contracting COVID-19 if released. As of September 26, 2023, zero inmates and staff members at Fort Dix FCI are positive for COVID-19.[3] *See United States v. Woolridge*, No. 3:09cr156 (DJN), 2021 WL 415131, at *5 (E.D. Va. Feb. 5, 2021) (finding no particularized risk where there were only eight active cases of COVID-19 at the petitioner's facility); *see also United States v. Wilkins*, No. 7:17-cr-407-JMC-1, 2021 WL 194311, at *3 (D.S.C. Jan. 20, 2021) (finding no particularized risk where there were only ten active cases at the petitioner's facility). The low number of positive COVID-19 cases at Petitioner's facility indicates

---

[2] *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (last updated May 11, 2023), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 26, 2023).
[3] *COVID-19 Cases*, FED. BUR. PRISONS, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited Sept. 26, 2023).

6

a low risk of contracting the virus. Although Petitioner notes the lingering effects of coronavirus at his prison facility, as of September 26, 2023, the BOP reports 1,226 inmates and 134 staff have contracted and recovered from COVID-19.[4] The numbers show that the COVID-19 cases at the facility are improving. Currently, Fort Dix FCI is operating at Level 1, which shows that his incarceration does not present a particularized risk of contracting COVID-19.

On the other hand, Petitioner proposes living with his aging parents in Hampton, Virginia, where he would be safer from contracting the virus. However, Hampton has an average of five (5) new COVID-19 cases a day.[5] Accordingly, Petitioner's mother, age 76, suffers from Parkinson's Disease and onset dementia, and his father, age 78, suffers from Alzheimer's Disease. Pet'r's Mot. at 2. Even if the Court decided to release Petitioner to home confinement, he would put both of his parents at severe risk of contracting COVID-19. Although the Court recognizes, and in no way minimizes the harsh realities incarcerated individuals have faced during the pandemic, Petitioner does not mention any potential harsher conditions of confinement that are unique to him for purposes of compassionate release. *See United States v. Ramirez*, 2021 WL 5233512, at *5 (S.D.N.Y. Nov. 10, 2021) ("If challenging the conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction."). Therefore, Petitioner is not entitled to compassionate release because he has not shown a possible risk of contracting COVID-19 at his BOP facility.

Third, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for receiving, viewing, and masturbating to child

---

[4] *Id.*
[5] *Tracking Coronavirus in Hampton, VA.: Latest Map and Case Count*, N.Y. TIMES, https://www.nytimes.com/interactive/2021/us/hampton-virginia-covid-cases.html (last visited Sept. 26, 2023).

7

pornography remains unchanged. During the investigation, federal agents uncovered 557 child pornography images, which includes six (6) videos and 107 pictures. PSR ¶ 17. In addition, Petitioner admitted that he had been viewing child pornography for five (5) to six (6) years. *Id.* This cuts against Petitioner's argument that the BOP considers him a "minimum" recidivism risk. Pet'r's Mot. at 15. Although the Court recognizes and commends the Petitioner for his participation in various educational, vocational, and rehabilitative courses, as well as his involvement with Fort Dix FCI's community church, these efforts are not extraordinary and compelling to earn a sentence reduction. *Id.* 15-16. As noted by sister courts, a "defendant's rehabilitation alone proves insufficient to warrant a sentence reduction." *See United States v. Woolridge*, No. 3:09CR156 (DJN), 2021 WL 415131, at *7 (E.D. Va. Feb. 5, 2021); *see also United States v. Ahmad*, No. 1:11-cr-554-TSE, ECF No. 75 (E.D. Va. Apr. 8, 2021) (finding that the defendant's coursework did not support compassionate release, reasoning that "[i]t is not uncommon for a defendant to take educational classes to pass the time in prison").

Additionally, Petitioner's release plan does not adequately protect the public from the potential of a subsequent offense. If released, Petitioner plans to live with his parents in Hampton. Pet'r's Mot. at 16. Petitioner notes he plan to serve as their live-in caregiver and provide for them financially by working from home for his family insurance business. *Id.* Additionally, Petitioner note he would be able to provide for his children. *Id.* Although the guidelines are not binding, the Sentencing Commission provides that extraordinary and compelling reasons exist under family circumstances when involving a minor, spouse, or partner. *See* U.S.S.G. § 1B1.13 n. 1 (C); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020). Regarding Petitioner's children, he has not referenced being the only caregiver for his children. Petitioner's children have a mother who can provide them with care. Concerning his parents, the advisory policy does not explicitly

8

cover incapacitated parents. The question remains whether Petitioner's aging and sickly parents serve as an extraordinary and compelling reason warranting release. Here, Petitioner has a sister and other relatives nearby who can assist with caring for his parents. Despite Petitioner's sister's documented diabetes and increased stress levels, Petitioner has not shown that he is the only available caretaker because his family can hire a full-time caretaker to assist with his parents. Additionally, Petitioner would have unlimited access to a computer by working from home, and that in no way can ensure Petitioner would not reoffend again. The Court does not doubt that Petitioner may be of assistance to his family, but his familial circumstances are not extraordinary and compelling to warrant release.

Furthermore, Petitioner does not explain or elaborate on how his release plan would provide a viable alternative to serving the remainder of his sentence. To date, Petitioner has served approximately 70.9% of his 108-month sentence, ECF No. 71. Despite commendable evidence of Petitioner's rehabilitation, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor and his release would not promote respect for the law or provide adequate deterrence. Therefore, Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for Compassionate Release, ECF Nos. 62, 67, is **DENIED.**

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Newport News, Virginia
September 2*, 2023

Raymond A. Jackson
United States District Judge